Our next case is UATP IP, LLC, UATP Management, LLC v. Kangaroo, LLC, et al. And Mr. Counselor Knight, you have reserved three minutes of time for rebuttal, correct? Correct. Three minutes, okay. You may proceed. May it please the Court, Steve Knight on behalf of the appellant, Kangaroo, LLC. This is a patent and trade dress infringement lawsuit that comes to this Court by way of an interlocutory appeal of a preliminary injunction ruling. Kangaroo asks this Court to reverse the preliminary injunction ruling because Urban Air did not establish a likelihood of success on the merits or that without the preliminary injunction it is likely to suffer imminent and irreparable harm. I'd like to start by first talking about the patent claim and to sort of set the table with respect to that claim. I'm just curious. Is Kangaroo currently operating its adventure park? Kangaroo is operating its adventure park as best as it can. I mean, it made substantial changes. We pointed out those changes in the filing. Have there been any changes that have been made that are not noted in the question for us? I am not aware of any additional changes that are not in the record, and I think the most recent set of changes are in the post-injunction filing that we did ask the Court to reconsider. And the primary problem here is that... I'm sorry. Just so I understand. My understanding is there was an unruled on post-preliminary injunction motion, I think from you, to vacate it because of post-preliminary injunction changes. And changes that may not have appeared from the original record. Right. And I assume that in the record of the district court attached to your post-preliminary injunction motion, those changes are identified. Are those changes identified in here? They are identified in this record. What you'll see from the record is after the preliminary... I'm sorry. In this record you mean in the record before us in the Court of Appeals? Yes, Your Honor, in the appendix. After the preliminary injunction was issued and after we filed the notice of appeal, we went back and we filed a motion to reconsider and we attached an affidavit of Stanley Tang, who's the owner of the son. Sorry, the owner's son, who has signed an affidavit that detailed the changes and they attached a lot of the photographs that demonstrate the changes in the color scheme as well as structural changes. Going back to the first part of the claim, the patent infringement claim, I wanted to sort of set the table because I think what's important to point out by way of background here is that it does not appear anywhere in this record that AEG, who was the original franchisee of Urban Air, was subject to any sort of a license agreement or any other restriction on its use of this Adventure Hub that's in the Laredo facility. But as a franchisee, they were obligated under the terms of the contract to certain IP obligations. Is that right? There were certain IP obligations but nothing with respect to this Adventure Hub. And what I would point out is that the building and the Adventure Hub, which is essentially a fixture within the building, was owned by Global Star, which was AEG's landlord. So Global Star owned the building and the equipment, including the Adventure Hub. When Urban Air canceled the franchise with AEG, it was after COVID hit. AEG couldn't keep up with the expenses. Urban Air sent AEG a very detailed letter about de-branding. That letter is at 722 in the appendix. That is a very important letter for this court to consider because it goes through a laundry list of things that Urban Air wants AEG to do to disassociate itself from Urban Air. And what's notably absent from anything in that letter is a demand to cease operations of any of the equipment inside. In fact, just the opposite. All that they say with respect to the equipment is, we would like for you to remove any indicia of Urban Air's name from the equipment, implicitly recognizing that this equipment might be used and operated by somebody else in the future. Now, after they canceled the franchise, Global Star and AEG went to Urban Air and said, look, we have this equipment. We have the building. If you'd like to continue to operate in the Laredo market, we give you the opportunity to take over the lease. Buy the equipment from us. We're familiar with a lot of these facts. I think you'd better get to your cut to large. It might be a preliminary injunction. So with respect to the – so we think that the claim, this patent infringement claim is dubious from the start, but we maintain that the district court erred in entering this preliminary injunction because they didn't establish the likelihood of success on their merits. Isn't there the problem here that the district court never went through any analysis of any patent claim and comparing the limitations of that patent claim to the features of Kangaroo's adventure park? That's exactly right, and that's even the second problem. The first problem is that the district court had already entered an order recognizing that it's dubious or questionable, a fact issue, as to whether they even own the patent because the only thing that was assigned to Urban Air was a provisional application. The patent that was subsequently issued adds additional matters, which were the subject of claims 6, 10, and 12. So the court had recognized it's a fact issue if they even have rights under the patent, yet it issued a preliminary injunction, problem one. Problem two, Judge, is what you just pointed out. Here, this court has recognized, particularly in the – Excuse me. At that point, were you arguing that they had no ownership in the patent, no interest in the patent? Say again, Judge? At that point, were you arguing before the court that there was no ownership or no interest in the patent? Yes, in fact, that issue was the subject of a motion to dismiss their lawsuit. They went through what the provisional application was for. It lacked certain diagrams that are included in the actual patent application. All of that was laid out, and the court actually entered a ruling saying, I'm going to deny the dismissal. However, I implicitly recognize that it's a fact issue whether they have an interest in this patent. And that fact issue never got resolved before the preliminary injunction was issued. And what I would point out, and this is related to what the court said during the preliminary injunction hearing, when Irvin Ayer offered the patent into evidence, the judge said, okay, that's admitted, but not validated. It's never been validated. Did the district court say that it seemed likely that UATP would establish its ownership? In the order, the court said – it did address that. Which one? In the preliminary injunction. It did make a comment that you're correct. But I dispute the rationale. What the court said is because the assignment language – Carried through from the provisional to what issued from the provisional. It used a shorthand. That would be my provision, is that you're entitled to all rights and interests associated with the provisional application. The court sort of construed it very broadly to say, well, maybe that means the subsequent patent as well. Do you disagree with the idea that in the preliminary injunction process, all that would be necessary, even on ownership, is a likelihood of success on it? That is the standard, but I dispute that there is a likelihood of success on the merits on that issue because of the language of the assignment is limited to what was assigned in the provisional application. But then if one gets beyond that to what you said is the second problem that Judge Chen made, that's – the failure to do a claims construction, which is what is so important – Well, not just the failure to do a claims construction. The failure to look at the patent, identify the elements, map the elements onto the accused thing, decide what claim constructions are needed and which ones aren't. None of that is here, right? None of that was done. There is no expert testimony. The record is bare on that. And what is so important in this case is that that process was necessary here. According to Urban Air, the patented characteristic, what they argue, is that their device has a zip line, a ropes course, and a soft playground course, which they say is combined in a unique and technical manner so it becomes one continuous hub of activity. The problem, though, is that the patent that was issued says nothing about a soft playground course at all. It talks about an obstacle course, which is notably absent from Kangaroo's facility. So even if you had worked to compare the patent with what Kangaroo is operating on its face, they don't match up. Beyond that, the patent has these very complicated diagrams and very complicated – If we were to send this back solely on the infringement finding of the court, does that completely undo the rest of the case? Do you have a trade dress? They do have a trade dress. I think if you were to send it back, clearly that would affect any decision by the district court with respect to the operation of this Adventure Hub. Their trade dress claim, I think, is somewhat broader than just the Adventure Hub. It's the look of other gadgets inside, other play equipment and things like that inside. I'll turn and address the trade dress. Let me ask you this other question. I think I know the answer. I just want to make sure. Have you requested that if we send it back, that it go to a different judge? I think that a different judge has already been appointed. That's because I believe Judge Hughes may have taken senior status in the interim. Fair enough. I would have to verify that. Next housekeeping question. If we reverse and send this back, does your appeal about the bond get mooted? I think that that would probably moot, but I would ask that the court, if there's any further preliminary injunction, that that rule has to be complied with. The district court didn't do it. I know that they argue that the court has discretion to set a zero bond, but the court didn't analyze that at all. It just simply was silent. I think that in a situation like this, that would have to be set. With respect to the trade dress portion of this preliminary injunction, what I would like to say is that the district court seems to have faced its decision that they're likely to succeed on the merits of this in two respects. First, they talk a lot about a trade dress interest in play equipment, and attraction structures, and also the color scheme that they have. Well, as this court knows, the part of this that deals with the play equipment and the structures, these are functional items that are not subject to... I guess problem number one is the district court never reached a conclusion and provided an explanation for why the asserted trade dress is non-functional, right? Correct. And then the second problem is the district court never went through any analysis to reach a conclusion as to whether the asserted trade dress has acquired secondary meaning or is inherently distinctive. Correct. And then the third problem would be that the district court never actually did a full analysis on whether there'd be a likelihood of confusion over whatever is inside Kangaroo's Adventure Park and the asserted trade dress. Not only didn't do a full analysis, but to the extent the court analyzed it at all, based on the evidence that they presented, which was just a couple of social media posts, that when Kangaroo opened their business... Right, those are clearly not enough to establish secondary meaning. You're pushing on an open door. Yeah, that's not enough to establish secondary meaning, nor is it enough to establish any sort of confusion. If anything, it establishes the lack of confusion because all of those posts said it's a different company, they've got a different pricing scheme, they've got different food. They knew it was not urban area. Here's another housekeeping question. How close are the parties to actually settling this matter and resolving all disputes? So this is skirting outside of the record and also a little bit outside of my comfort zone to know this because I'm not handling it in the trial court. But what I heard on that front was that they were getting close. I believe that Urban Air was looking at trying to find maybe a different franchise person and incentivizing us to get out of it. My understanding is that they uncovered problems with the building, which is around the time that whole issue... That's beyond the record. That's beyond the record. So you're into your rebuttal time. Do you want to reserve that? I'd like to reserve. Okay. Let's hear from the other side. Counselor Hanslick. We have a big hill to climb issue. May it please the Court, Your Honor. My name is Chris Hanslick. I represent the appellee UATP, the entities. I may refer to them as Urban Air because that's the Urban Air Trampoline Park that is actually operating. Appreciate your comment. Actually, at this stage of the preliminary injunction, we do believe that there was sufficient evidence presented to the trial court for this court to affirm the preliminary injunction. As you've heard, it's a substantial likelihood of success. Let's reverse on the infringement finding of the court. What does that do to irreparable harm in the preliminary injunction? On the irreparable harm, there's still findings of irreparable harm in this order where what was the evidence presented were comparisons of the attractions when it was under-franchised versus as is operating by kangaroo to show the substantial similarities. And there is case law to show that... So there would be trade dress. Yes, Your Honor. So the trade dress, if you reversed on patent, we would still be successful and then the court addresses both trade dress and patent. So the injunction would still stand on trade dress for that purpose alone. And as you've heard, the injunction is still in place. There is still activity. We think there could still be... If we were to reverse on trade dress as well, what does that do to your case? If I understand your question, if you reverse on both patent and trade dress or just trade dress? Both. On both, if you reverse on the idea of substantial likelihood of success on both patent and trade dress, then the injunction, the current order, would not hold. We'd have to go back. I guess we'd have the opportunity to have another injunction hearing and to answer Judge Chin's question on housekeeping. We are now in front of Judge Drew Tipton in the Southern District. Okay. So, Howard, if I can turn to the trade dress argument, the trade dress that Urban Air has established deals with the colors that it uses, neon orange, yellow, Urban Air, lime green, and cosmic dust blue. And I didn't come up with those names. But along with the layout, the attractions that are offered, and the combination of all those elements together to establish a trade dress. Courts have recognized, such as the 2 pesos Taco Cabana case, that that overall atmosphere, look, and feel is sufficient to establish trade dress. While the order that we're dealing with on pages 1 through 3 of the record doesn't go through a detailed analysis, the court does mention and address the fact that evidence was presented. And under an abuse of discretion standard, this court should give deference to the trial court that sufficient evidence was found and considered in making this ruling. So, let me just ask you, I was confused about what aspects of this list of colors is the asserted trade dress. I thought I understood the preliminary injunction to preclude Kangaroo from using each and every one, each one of the itemized colors. Is that what you understand it to be? Or is it to use them all collectively? So that if it just stops with, I don't know, whatever that blue was that you mentioned, then you no longer have to be using that trade dress or what? Is it each one or only the set as a whole? I believe the order as written, Your Honor, talks in terms of using, enjoined from using all of those colors in its facilities in the combination. It doesn't use the word combination. It just simply says from using in the list of the colors in the facility, as well as in social media posts. My question is, what do you understand that to mean? If I say, don't do all these things, I have retained the precise ambiguity that I'm trying to get beyond. Does that mean you can't use any of them? Or does that mean you can't use the collection, all of them together? That you can use if you can use any subset you want. I think it would be a fact-intensive inquiry depending on the removal. It's your trade dress. What are you asserting the trade dress to be? I think it's the combination of the use of all those colors. If they were to remove one, but it didn't change the overall look and feel, similar to the Taco Cabana and the Tupezo, if it didn't change that, then it would still be a violation of our trade dress. If they hypothetically removed all but just one color, maybe that would be enough to not have the same look and feel. But that's the key to the inquiry is that. Do you agree that in figuring out what the protected trade dress is under a look and feel that you have to, in particular, look at the, I think the phrase is attraction structures, the actual structures in there, and figure out which aspects of those are functional. Most of the aspects will be functional. Most of the look here is just surface appearance. And you have to define what the trade dress is by eliminating all of that stuff and then defining it in a way that's precise enough to comport with Rule 65 if you're doing an injunction, but also just for trade dress liability. I do think at the final trial that is a requirement, but I believe at this stage, and functional elements can be part of a trade dress as we have here. There are some things that are functional and non-functional. The non-functional aspects of them. Pardon? The non-functional aspects of them. Yes, and our attractions, the attractions we have aren't, they're unique to ours. Some are unique. Some are similar to other competitors, but the point being there are other ways to configure a trampoline park and not infringe upon the elements that we have in ours and the combination, the attractions, the colors, and the way it's all laid out, which has become going into inherited distinctiveness, it has acquired a look and feel that is known for their Urban Air brand, and we've seen that in social media posts where, in fact, in the record, the comment was it's literally Urban Air. Well, doesn't the district court need to go through those findings and make that analysis in order for it to grant a valid preliminary injunction? I believe the court, while maybe not as detailed as some orders have been, did do that where it considered the evidence, it states that the evidence was presented by Urban Air and certainly... And then something clear enough to permit meaningful appellate review, I guess. I didn't see anywhere where it said, okay, I've looked at this asserted trade dress and here's why I find it to be non-functional. Here's also why I find that it has, in fact, acquired secondary meaning, or it's likely that that is the outcome, or alternatively inherently distinctive. I didn't see the district court go through any of that analysis. Because it did not. I mean, at least... That's a defect, isn't it? I'm sorry. Isn't that a defect in the district court's order? I don't believe it's a fatal defect, Your Honor. I mean, it is that those types of words are not contained in the order, but I do believe the judge's reference in the abuse of discretion standard to give deference to the trial court who heard this evidence and great deference to weighing that evidence as well as the credibility of the witnesses. There is sufficient language in this order to give the discretion to the trial court that those considerations were taken at this preliminary stage sufficient to uphold this order. So we should assume that the district court essentially adopted your arguments in your brief about non-functionality, about secondary meaning, etc., or inherent distinctiveness. I can't remember which one. You pushed both, I think. Yes, Your Honor, we did. Yes, that is true because there's reference both to the evidence and he considers and states the counter-evidence that Kangaroo brought to the table that day but said it was insufficient to overcome, as an example, the presumption of irreparable harm on page 3 of the order. So there's enough. While there could be more, unquestionably, and maybe always could be more, there is sufficient enough at this stage to uphold a preliminary injunction given that the trial courts get the deference in weighing the evidence and considering whether it meets the standards. I believe it's your view that your trade dress is product packaging and not product design. Is that right? I'm sorry? I didn't hear the first part of that. I believe it's your position that your asserted trade dress amounts to product packaging and not product design. Is that correct? That is correct, Your Honor. If it's product packaging, then what would you think is your actual product? The product is the services of the experience and the coming in to be able to use the park in this configuration that it is. The product isn't the attractions? I think it's that and the way they're assembled and put together. So the attractions plus the way they're put together, the hub, the trampolines, the Ninja Warrior. Isn't that your asserted trade dress? The layout, the attractions, the configuration? Yes, that is the trade dress. So then maybe it's product design. I guess the product itself is the actual trampolines that the kids play on the ropes course, but it's the assembly. That's the product. The packaging is how it's assembled, the color schemes used, the atmosphere that's created, and the overall experience, which we think puts us into the context of the two pesos Taco Cabana case of product packaging, which does not require secondary meaning, as is course aware. As far as you know, this matter isn't imminently about to settle, right? I mean, we over here, the court has to write an opinion here. This isn't going to settle tomorrow, is it? It is not going to settle tomorrow, Your Honor. So we talked about the trade dress. On the patent side, the appellant's position is simply that claim construction was required. We differ, and you've seen that in our paper, where in the Chamberlain case, the court said in almost every case, and the key distinction is in every case cited by appellant, there was dispute as to language within the claim itself. Which patent claim are you asserting in the patent? I didn't see you identify a particular patent claim. I don't believe there is a specific claim. The other thing you won't see in this record is any dispute by Kangaroo, the appellant, of any language in the claim. Well, they said they segregated their central hub away from the zip line and the ropes course, and so it's no longer one continuous play hub area, and so therefore it's not in communication as recited in Claim 1 with these elevated equipment structures. Well, the district court found that they didn't present sufficient evidence of those changes. Right, and whose burden of proof, I guess, is... We believe it's theirs to show. It's your burden of proof to show a likelihood of success that their Kangaroo Adventure Park is infringing one claim, right? Well, we took the position that by continuing to use the hub, which is protected by patent without proper permission... Counselor, you have to map your claims to the infringers, and that hasn't happened here. I haven't even seen the claim that's been identified. It's going to be really hard for you to argue effectively that there's infringement at this point in time. Maybe later on, you know, as a case progresses, but right now you can't even identify for us which claim you're referring to. It's the overall use without permission of the entire... What's the claim, though? It would be all the claims, Your Honor, because, again, there's no dispute, as in other cases, and the two you heard this morning before you and the cases that have been reported where there's a dispute as to specific language in the claim which requires the court to do a construction of those claims. We're not doing that here. But here we don't even know which claim we're addressing. We think they've waived... They didn't make this argument in the lower court, so we think there's a waiver argument. They never made an issue that there should have been a claim construction because, again, they testified at the... But they're arguing that the preliminary injunction and the branch of the preliminary injunction that deals with irreparable harm, that the court erred in that. With respect to at least patent infringement, if you can't show... If you haven't asserted a claim, there can't be an infringement. So it doesn't matter whether you have some claim construction or not. I mean, before you even have claim construction, you've got to identify what claim you're going to construe. We don't have that here. We have the... Again, what we have is that they're using a patented item, the hub, that we own without authorized use. And there are cases that have said you don't have to have a claim construction in order to uphold a preliminary injunction. It's their burden to show that they've made some type of change that would take it out of an infringing activity. The district court's irreparable harm analysis seemed to be devoted exclusively to the trade dress matter, and I didn't see it separately analyzing irreparable harm for any patent infringement. Is that right? I think that's a fair reading, Your Honor. So we don't have a finding on irreparable harm by the district court as to the patent infringement question. Not that I can find in the three pages of the order. Again, but that would not be fatal to the preliminary injunction as long as it's upheld on the trade dress claim. Because all we need is one, as this court's well aware. It doesn't have to be both. So if you were to find that it's insufficient as to the patent, not to the trade dress, the preliminary injunction is still valid and it should be enforced. Thank you for your time, Your Honor. Thank you. Mr. Knight, you have a little bit of time left. You have two minutes. Okay. In that two minutes, I just want to address a couple of matters, starting with the irreparable harm. What the district court said on that point was questions by customers about the new trampoline park that suggests similarities between urban air and kangaroo do not necessarily imply confusion. It does, however, evidence similarities that harm urban air. And I submit that even that finding is deficient because the standard, as this court knows, is imminent and irreparable harm. That's the first problem. The second problem is that there is absolutely no evidence of imminent and irreparable harm. There is no data submitted in evidence about them having lost a single penny in sales because of the operation of this kangaroo facility. There's no reputational harm. There's no evidence that anybody who frequented the kangaroo facility formed a belief that it was an urban air facility, had a bad experience, and left... I believe the district court cited a trademark statutory section about a rebuttable presumption of irreparable harm. If we're getting into the rebuttable presumption, then we get into the delight here because we've cited plenty of cases. Well, no, no, but just put aside... put aside delay. 1116A addresses both permanent injunctions and preliminary injunctions, and it says, unless I'm misremembering, that for a preliminary injunction, a likelihood of success gives rise to a presumption that a preliminary injunction should issue or something like that. But you can rebut that presumption. And one way to rebut a presumption that somebody's going to suffer irreparable harm, this high degree of harm, is by looking at the record and to see what did they do about it. Here, they discovered the existence of kangaroo, and they waited almost a full year before they acquired a hearing on their preliminary injunction request. There's no imminent harm when somebody waits a year. So we've cited case law that says if you wait a few months, the presumption is rebutted. They're not entitled to it anymore. Okay, you're out of time. Thank you, Judge. Our cases are now concluded. This court stands adjourned.